### SUSAN BONITO *v.* DOMINICK BONITO
### (AC 33307)

Lavine, Beach and Espinosa, Js.

Argued October 10, 2012—officially released February 12, 2013

*Nicholas J. Adamucci*, for the appellant (defendant).

*Susan E. Nugent*, with whom was *Thomas A. Esposito*, for the guardian ad litem for the minor children.

*Opinion*

ESPINOSA, J. In this marital dissolution action, the defendant, Dominick Bonito, appeals from the judgment of the trial court. The court dissolved the marriage between the defendant and the plaintiff, Susan Bonito, and entered various financial orders, as well as orders

related to the custody of the parties' three minor children. The defendant claims that the court (1) was without jurisdiction to render judgment because it failed to render its decision within 120 days following the completion of the trial and (2) abused its discretion by way of its various financial orders that, the defendant asserts, unfairly favored the plaintiff. We affirm the judgment of the trial court.

The plaintiff filed for divorce in September, 2008. In its memorandum of decision of January 18, 2011, the court determined that the parties' marriage, which began in August, 1993, had broken down irretrievably. The court found that "fault rest[ed] wholly and squarely on [the defendant's] shoulders" and that "he was essentially a despot in his home and if his wife or children dared to cross him they would pay dearly." The court dissolved the marriage, awarded sole legal and physical custody of the parties' children to the plaintiff, ordered the defendant to pay child support and alimony and entered other financial orders including those related to the family home, retirement assets, debts and insurance. This appeal followed.[1] Additional facts will be set forth as necessary.

I

First, the defendant claims that the court was without jurisdiction to render judgment because it failed to render its decision within 120 days following the completion of the trial. We disagree.

The record discloses the following additional relevant facts. The trial occurred over several days between July 12 and August 23, 2010. On August 23, 2010, following

---

[1] The plaintiff did not file a brief with this court. In addition to the brief and arguments advanced by the defendant, we consider the appeal on the basis of the brief and arguments advanced by the guardian ad litem of the parties' minor children, who urges us to affirm the judgment of the trial court.

the presentation of evidence, the parties made closing arguments in lieu of filing written memoranda.

On September 1, 2010, the plaintiff filed an "Ex Parte Emergency Motion for Hearing to Open Evidence." In the motion, the plaintiff represented that, during the trial, Thomas A. Esposito, the guardian ad litem for the parties' children, recommended that the defendant be afforded the right to unsupervised nontherapeutic visits with the parties' youngest child, R. The plaintiff represented that "since the date of the close of evidence, a serious and significant event occurred during the defendant's visitation with said minor child" and, consequently, Esposito had altered his recommendation regarding the defendant's visitation rights with R. By way of relief, the plaintiff asked the court to "order an immediate hearing regarding said incident [and] the guardian ad litem's revised recommendations . . . ."

In conjunction with the motion to open the evidence, the plaintiff submitted an affidavit from Esposito, who set forth certain facts that he had learned concerning an unsupervised visit between the defendant and R on August 29, 2010. Specifically, Esposito learned that, during the unsupervised visit, the defendant did not share information with the plaintiff with regard to the time at which he would return to the family home with R. Later in the day, while the plaintiff was out shopping, the defendant compelled R to tell the plaintiff over the telephone that he was locked outside of the family home alone. Believing that R had been left unsupervised and concerned for R's welfare, the plaintiff contacted the police. The plaintiff returned home and found R, the defendant and the police in the driveway. R later told a police officer that the defendant told him to lie to the plaintiff about being left alone so that she would drive home quickly. The record reflects that R was eleven years old in August, 2010, and had special needs.

The court held an evidentiary hearing on September 29, 2010, related to the plaintiff's motion to open the evidence. The parties, represented by counsel, appeared at the hearing. At the conclusion of the hearing, the court found that the defendant told R to lie to the plaintiff on August 29, 2010, and that R lied to the plaintiff in the defendant's presence. The court found that the defendant's actions were part of a larger pattern of destructive conduct that was motivated by his desire to retaliate against the plaintiff. The court found that the defendant's conduct was a detriment to R. Immediately, the court terminated the defendant's visitation rights with R.

The court issued its final decision in the dissolution action on January 18, 2011, 111 days following the evidentiary hearing of September 29, 2010. Its decision encompassed many issues relating to the parties, including the defendant's visitation rights with the parties' children. In its decision, the court made findings with regard to the incident that occurred on August 29, 2010, concerning R. Moreover, the court granted the plaintiff sole legal and physical custody of the parties' children and did not afford the defendant any visitation rights with regard to the children.

On February 3, 2011, the defendant filed a "Notice of Objection to the Past Due Judgment," in which he argued that the trial ended on August 23, 2010, the court did not render a decision within 120 days of that date and, consequently, a new trial was warranted under General Statutes § 51-183b. The defendant argued that the court was without jurisdiction to render judgment on January 18, 2011. The court denied the motion on March 18, 2011. With regard to the court's jurisdiction to render judgment on January 18, 2011, the defendant advances the arguments he raised before the trial court.

General Statutes § 51-183b provides: "Any judge of the Superior Court and any judge trial referee who has

the power to render judgment, who has commenced the trial of any civil cause, shall have power to continue such trial and shall render judgment not later than one hundred and twenty days from the completion date of the trial of such civil cause. The parties may waive the provisions of this section." "[T]he defect in a late judgment is that it implicates the trial court's power to continue to exercise jurisdiction over the parties before it. . . . Absent waiver of the provisions of the statute, a judgment rendered by a court beyond the time period permitted by § 51-183b, lacks personal jurisdiction over the [parties]. . . . Even after the expiration of the time period within which a judge has the power to render a valid, binding judgment, a court continues to have jurisdiction over the parties until and unless they object." (Citations omitted; internal quotation marks omitted.) *Gumpert* v. *Ore-Ida Foods, Inc.*, 39 Conn. App. 635, 640–41, 666 A.2d 437 (1995). "[The parties' consent to a late judgment] may be implied from the conduct of the parties or their attorneys, in proceeding without objection with the trial or argument of the case, in remaining silent until the judgment has been rendered or in failing to object seasonably after the filing of the decision." *Rowe* v. *Goulet*, 89 Conn. App. 836, 845, 875 A.2d 564 (2005).

Here, the defendant seasonably objected to the court's judgment. The facts surrounding the issue are undisputed and are evident from our review of the record. "A challenge to the court's personal jurisdiction that presents a question of law applied to undisputed facts is an issue over which our review is plenary." *Commission on Human Rights & Opportunities ex rel. Arnold* v. *Forvil*, 302 Conn. 263, 270, 25 A.3d 632 (2011).

The issue before us requires that we ascertain "the completion date of the trial" for purposes of § 51-183b. That portion of the statute has been the subject of interpretation and has been applied in several appellate

decisions. In accordance with *Frank* v. *Streeter*, 192 Conn. 601, 604–605, 472 A.2d 1281 (1984), this court consistently has interpreted the statute such that "[t]he one hundred twenty day period begins to run from the date that the parties file posttrial briefs or other material that the court finds necessary for a well reasoned decision." *Cowles* v. *Cowles*, 71 Conn. App. 24, 26, 799 A.2d 1119 (2002); see also *Jordan* v. *Jordan*, 125 Conn. App. 207, 209 n.4, 6 A.3d 1206 (2010) (same), cert. denied, 300 Conn. 919, 14 A.3d 333 (2011); *O.J. Mann Electric Services, Inc.* v. *Village at Kensington Place Ltd. Partnership*, 99 Conn. App. 367, 374 n.5, 913 A.2d 1107 (2007) (same); *Bramwell* v. *Dept. of Correction*, 82 Conn. App. 483, 488, 844 A.2d 957 (2004) (same); *Northeast Savings, F.A.* v. *Scherban*, 47 Conn. App. 225, 231, 702 A.2d 659 (1997) (same), cert. denied, 244 Conn. 907, 714 A.2d 2 (1998).

It is undisputed that, in reaching a final judgment in the dissolution action, the court had to resolve issues related to the parties' children, such as custody and visitation rights. The court heard evidence related to these issues during the hearings that concluded on August 23, 2010, including testimony from Esposito. The plaintiff, by her September 1, 2010 motion, asked the court to "open the evidence." In response to the motion, the court scheduled an evidentiary hearing at which the plaintiff presented additional evidence that was relevant to the custody and visitation issues yet to be resolved by the court. In its January 18, 2011 decision, from which the defendant appeals, the court explicitly referred to this evidence and made findings related to the evidence.[2] On this record, it is clear that on September 29, 2010, the court heard additional evidence, based on an incident that occurred prior to the time that it

---

[2] We note that, in its memorandum of decision, the court referred to the dates on which it heard evidence. In so doing, it referred to the September 29 hearing.

rendered its decision, that it deemed necessary for a well reasoned decision in the dissolution action. As the court subsequently rendered its judgment on January 18, 2011, within 120 days of hearing this additional evidence, the defendant's jurisdictional argument is without merit.

## II

Next, the defendant claims that the court abused its discretion by way of its various financial orders that, the defendant asserts, unfairly favored the plaintiff. We disagree.

## A

The defendant's primary argument in connection with this claim is that the court "implicitly" found that he fraudulently transferred assets in an effort to deplete the marital estate prior to the time that the plaintiff initiated the present dissolution action, the court improperly "did not articulate the standard of proof it used in finding [that he completed such] fraudulent transfers" and, consequently, "the court should not have considered the transfers in fashioning its financial and property awards." This argument is not supported by the record.

The court made the following relevant findings: "After filing for divorce in 2008, [the plaintiff] was shocked to discover her husband had taken out a line of credit in November, 2006, (after she threatened to file for divorce and moved out of the bedroom) removing $370,000 to $379,000 [in] equity from the [family] home. As of the trial, the home was in foreclosure. [The defendant] stopped paying the mortgage, second mortgage and taxes in late 2008, despite a court order of May 5, 2009, specifically requiring him to do so. . . .

"[The defendant] testified that he used the proceeds of the line of credit to make a real estate investment

with his brother, a lawyer in Nevada. He was clueless about the details of the alleged investment and presented no documentation to prove the investment. [The defendant] did not know if the investment was made as an individual, LLC, partnership or corporation. He testified [that] the investment might be in residential/commercial real estate located in Nevada and/or California. He testified [that] he wired his brother $250,000, but $125,000 was returned to him. [The defendant] testified [that] his brother declared bankruptcy in the past year due to the declining real estate market. He did not know if or when the money would be repaid or if the investment had been lost.

"[The defendant] himself filed [for] bankruptcy in July, 2009 . . . . [The defendant's] bankruptcy schedule D shows [a] $150,000 loan to his brother. At trial, the defendant claimed [that] he gave his brother the money [at issue] to support himself and pay medical bills when he had heart attacks, but could not recall when this money was transferred to his brother. [The defendant] claimed an additional $25,000 was transferred to his brother over a period of time from 2005 to 2009. [The defendant] presented no documentation for any of the money he claimed to have transferred to his brother and was unable to classify the funds as a loan, gift [or] investment. Finally, [the defendant] was unable to tell the court if he ever expected his brother to repay him.

"[The defendant's] August, 2008 bank statement shows [that] he withdrew $100,000 on August 21, 2008, after [the plaintiff] told him she was seeing a divorce lawyer and shortly before the writ, summons and complaint was served. In addition, [the defendant] testified [that] he took loans from his mother in the amount of $150,000 [to] $152,000 during the pendency of the divorce. [The defendant's] testimony was inconsistent with sworn financial affidavits filed with the court and

his bankruptcy petition and filings. The court finds the defendant's testimony [to be] evasive, inconsistent and not credible. The court did not believe the defendant was truthful regarding his alleged investment with his brother, and it was evident [that] he removed the equity from the home as a direct result of [the plaintiff's] threats to file for divorce."

Later in its memorandum of decision, the court found that "[the defendant] did not put [the plaintiff's] name on the deed to the family home and immediately withdrew the equity in the marital home to put it beyond the reach of [the plaintiff] and the court [in the present] dissolution action."

We carefully have reviewed the court's decision. The court found that the defendant transferred substantial marital assets for the purpose of shielding them from the plaintiff in the present divorce action and that the details of the defendant's purported investment were unclear. The court, however, did not state that the defendant committed an act of fraud. Essentially, the defendant's claim rests on two presumptions. First, he invites this court to presume that the court made a finding concerning fraud that is not apparent from the record. Second, he invites this court to presume that because the court did not articulate the correct legal principles and standard of proof concerning fraud, the court's decision was flawed. Nonetheless, the defendant asserts that there was evidence of fraud before the court and that "the court's findings are supported by the evidence."

This aspect of the claim is without merit. It is well settled that this court does not presume findings that were not made nor, absent support in the record, does it presume that a court applied an incorrect standard of proof in finding facts. See, e.g., *Kaczynski* v. *Kaczynski*, 124 Conn. App. 204, 206 n.2, 3 A.3d 1034 (2010) ("the

reviewing court will not presume error from silence as to the standard used"); *State* v. *Baker*, 50 Conn. App. 268, 275 n.5, 718 A.2d 450 ("[w]e do not presume error; the trial court's ruling is entitled to the reasonable presumption that it is correct unless the party challenging the ruling has satisfied its burden of demonstrating the contrary" [internal quotation marks omitted]), cert. denied, 247 Conn. 937, 722 A.2d 1216 (1998).

## B

To the extent that the defendant argues, in broad terms, that the court's financial orders were "excessive and inequitable" in the plaintiff's favor, we reject the claim. In its memorandum of decision, the court stated that it considered the relevant statutory criteria and regulations in crafting its financial orders. The court made detailed findings concerning the parties, including but not limited to those related to their age, their health, their employment, the amount and sources of their income, their skills and employability, their financial assets and liabilities as well as their financial needs. As set forth previously in this opinion, the court considered the cause of the dissolution, finding that fault rested solely with the defendant. The court's analysis reflects due consideration of relevant statutory criteria.

"[T]here is no set formula the court is obligated to apply when dividing the parties' assets and . . . the court is vested with broad discretion in fashioning financial orders." *Casey* v. *Casey*, 82 Conn. App. 378, 386–87, 844 A.2d 250 (2004). In reviewing financial orders in dissolution cases, "this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . In making this determination, we allow every reasonable presumption in favor of the correctness of the trial court's action." (Citation omitted; internal quotation marks omitted.) *Maturo* v. *Maturo*, 296 Conn. 80, 123–24, 955 A.2d 1 (2010).

Apart from the argument advanced in part II A of this opinion, the defendant does little more than express general dissatisfaction with the court's financial orders. Viewing the court's detailed findings of fact and its financial orders in accordance with the deferential standard of review set forth previously herein, we do not disturb the court's judgment. The defendant has not demonstrated that the court's orders were the result of a misconception or a misapplication of the law, or that they reflect an abuse of the court's broad discretion.

The judgment is affirmed.

In this opinion the other judges concurred.