******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# RICHARD KENT *v.* FLORENCE DIPAOLA
## (AC 38347)

DiPentima, C. J., and Kahn and Sullivan, Js.*

*Syllabus*

The plaintiff appealed to this court from the judgment of the trial court dissolving his marriage to the defendant and issuing certain financial orders regarding the defendant's pensions, the marital home and the percentage of the marital estate that was awarded to him. *Held*:

1. The plaintiff could not prevail on his claim that the trial court improperly failed to include the defendant's pensions in its division of the parties' marital property and to credit the testimony of his pension actuary as to the present value of the defendant's pensions: that court did in fact value and distribute the defendant's pensions, as it accounted for the pensions in its financial orders when it awarded all of the income from the pensions to the defendant and, in exchange, offset the monthly income from the pensions by ordering that the plaintiff would not be required to pay child support, which constituted a downward deviation from the presumptive amount in the child support guidelines, and by considering that the pensions had accrued substantially prior to the marriage and that it had ordered little financial contribution from the plaintiff to the defendant, and there was no merit to the plaintiff's claim that the court should have made that distribution more clear or placed specific values on its determinations, the plaintiff having failed to move for an articulation; moreover, the plaintiff's claim that the court improperly failed to credit the testimony of his pension actuary as to the present value of the defendant's pensions was unavailing, as the method of valuation for pension benefits is left to the discretion of the trial court, which considered the testimony of the actuary and elected to use a modified present division method in its valuation of the pensions, and, therefore, it was not necessary for the court to rely on the testimony from the actuary.

2. The plaintiff could not prevail on his claim that the trial court abused its discretion in awarding him 33 percent, and not 50 percent, of the marital home; the court, which thoughtfully and carefully considered the testimony, exhibits and relevant statutory factors in dividing the marital property, found that the defendant had purchased the home prior to the marriage, that she had made a 20 percent down payment on the home, and that, although the plaintiff made minor financial contributions to home improvements, the defendant was solely responsible for major home improvements and made greater economic and noneconomic contributions during the marriage.

3. The trial court did not abuse its discretion in its division of the marital estate; the plaintiff's claim that the trial court improperly awarded him only 33 percent of the marital estate by failing to account adequately for his age, health, station, occupation, amount and sources of income, earning capacity, vocational skills and employability was essentially a recitation of his testimony during the trial, the plaintiff failed to cite any authority for his claim that the court should have ordered a more equitable distribution of property and assets, and the trial court considered the evidence and applied the relevant factors set forth in the statute (§ 46b-81) governing the distribution of assets in a dissolution action.

Argued September 20—officially released December 5, 2017

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Colin, J.*; judgment dissolving the marriage and granting certain other relief, from which the plaintiff appealed to this court. *Affirmed*.

*David V. DeRosa*, for the appellant (plaintiff).

*Samuel V. Schoonmaker IV*, with whom, on the brief, was *Wendy Dunne DiChristina*, for the appellee (defendant).

*Opinion*

DiPENTIMA, C. J. The plaintiff, Richard Kent, appeals from the judgment of the trial court setting forth financial orders incident to the dissolution of his marriage to the defendant, Florence DiPaola. On appeal, the plaintiff claims that the court erred with respect to its orders regarding the defendant's pensions, the marital home and the percentage of the marital estate that was awarded to him. We disagree and, accordingly, affirm the judgment.

The following facts, as set forth in the court's memorandum of decision, and procedural history are relevant to our discussion. The parties met in March, 1989, and soon thereafter, the plaintiff moved into the defendant's home.[1] The parties were married in March, 1998, and have a minor child.[2] During the course of their relationship, the parties kept their finances separate. They also maintained records of "virtually everything" that they purchased, and the "receipts were then tallied by the plaintiff and monitored by him through a monthly spreadsheet so that each party could pay their share. This included keeping track of such small details as how much was spent on phone calls, hot dogs, stamps, dog food and cookies."

In the late 1990s, the plaintiff worked in the financial sector, earning $168,000 in 1998. In 2004, he switched careers and became a realtor. In 2013, he earned approximately $76,000, but in 2014, only $7437. As a result of this decreased income, the plaintiff, who was sixty-three years old at the time of trial and had no health conditions that significantly impacted his ability to work,[3] had been using his retirement accounts to pay his living expenses. The defendant, who was nearly seventy-two years old at the time of trial,[4] was retired following "an impressive and accomplished work history that spanned forty-four years. She worked her way up the corporate ladder from a junior entry level position to a managing director."

The defendant had several pensions in pay status that provided her with approximately $50,000 in gross annual income. The plaintiff presented a pension actuary as an expert witness. The pension actuary testified that the present value of the defendant's pensions totaled $662,606. The defendant also received social security benefits for the child of approximately $1350 per month.

With respect to its financial orders,[5] the court expressly considered all of the relevant factors set forth in General Statutes § 46b-81. The court stated: "In addition, the orders reflect the following specific considerations: (1) as previously noted, the defendant's contributions to the acquisition, preservation and appreciation of the assets is far greater than the plaintiff's contributions; (2) the defendant is being ordered

by this decision to be more responsible than the plaintiff for the financial support of the parties' minor child; (3) the plaintiff's age, health and current employment status lead this court to conclude that he has a greater opportunity than the defendant to acquire assets and income postdissolution; (4) the plaintiff is more responsible than the defendant for the causes of the breakdown of the marriage;[6] (5) the defendant's noneconomic contributions to the marriage are far greater than those made by the plaintiff; (6) each party had a career and wealth at the time of the marriage, and the defendant had substantially greater premarital assets; (7) each party is fully capable of supporting themselves; (8) the length of the marriage; (9) the plaintiff has provided little to no financial support to the defendant for the benefit of the child since 2012; and (10) the unusual financial structure of this marriage where each party essentially kept their finances separate from each other, except for a sharing of some expenses for a substantial period of time." (Footnote added.)

The court concluded that it was not necessary to calculate the value of the parties' assets at the time of the marriage with "mathematical precision . . . ." The court stated: "Based upon the evidence, the court does find, however, that the defendant came to this marriage with far greater assets than the plaintiff, including, most significantly, the Stamford home where the parties resided together, and that the defendant's economic and noneconomic contributions to the acquisition, preservation and appreciation in the value of the parties' estates were substantially greater than those made by the plaintiff."

The court divided the combined current assets of the parties, totaling $4,619,655,[7] awarding 33 percent to the plaintiff and 67 percent to the defendant. To effectuate this division, the court ordered a distribution from the defendant to the plaintiff in the amount of $300,000 pursuant to § 46b-81.

The court did not include the defendant's pensions in this division. Instead, the court accounted for the defendant's pensions in a separate calculation. The court stated: "The present value of the defendant's pensions that are all currently in pay status are not included in this total since those pensions were substantially accrued prior to the marriage and are being treated as an income stream that will be used to support the defendant and the minor child with little financial contribution being ordered today to be paid by the plaintiff."

The court stated that, as a result of the division of assets and the defendant's receipt of social security income for the minor child, it was ordering that the defendant be responsible for the child's educational expenses and would not order the plaintiff to pay child support. In further explaining this order, the court noted

the presumptive child support award under the applicable guidelines[8] would require the plaintiff to pay $257 per week to the defendant. The court stated: "Based upon the division of assets set forth in this decision, including the recognition that the defendant has a steady pension income stream and the plaintiff does not, a strict application of the guidelines in this case would be unfair and inappropriate, and a deviation on that basis from the presumptive support award is warranted." The court deviated from the child support guidelines on an equitable basis: the defendant, fully retired with a debt-free home, did not need financial support from the plaintiff, who was not similarly situated. Finally, the court ordered the defendant to be liable for the child's unreimbursed medical and dental expenses, and awarded the plaintiff $40,000 for attorney's fees.[9] This appeal followed.

Before addressing the specific claims raised by the plaintiff, we set forth certain relevant legal principles and our standard of review. "The purpose of a dissolution action is to sever the marital relationship, to fix the rights of the parties with respect to alimony and child support . . . [and] to divide the marital estate . . . ." (Internal quotation marks omitted.) *Rozsa* v. *Rozsa*, 117 Conn. App. 1, 11, 977 A.2d 722 (2009).

Section 46b-81 governs the distribution of the assets in a dissolution case. *Gyerko* v. *Gyerko*, 113 Conn. App. 298, 303, 966 A.2d 306 (2009). That statute authorizes the court to assign to either spouse all, or any part of, the estate of the other spouse. Id., 312. "In fixing the nature and value of the property, if any, to be assigned, the court, after considering all the evidence presented by each party, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." General Statutes § 46b-81 (c); see also *Coleman* v. *Coleman*, 151 Conn. App. 613, 616–17, 95 A.3d 569 (2014).

Our standard of review is well established. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . This standard of review reflects the sound policy that the trial court has the

opportunity to view the parties first hand and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, in which such personal factors such as the demeanor and the attitude of the parties are so significant. . . .

"Importantly, [a] fundamental principle in dissolution actions is that a trial court may exercise broad discretion in . . . dividing property as long as it considers all relevant statutory criteria. . . . While the trial court must consider the delineated statutory criteria [when allocating property], no single criterion is preferred over others, and the court is accorded wide latitude in varying the weight placed upon each item under the peculiar circumstances of each case. . . . In dividing up property, the court must take many factors into account. . . . A trial court, however, need not give each factor equal weight . . . or recite the statutory criteria that it considered in making its decision or make express findings as to each statutory factor." (Citation omitted; internal quotation marks omitted.) *Wood* v. *Wood*, 160 Conn. App. 708, 720–21, 125 A.3d 1040 (2015); see also *O'Brien* v. *O'Brien*, 326 Conn. 81, 121–22, 161 A.3d 1236 (2017); *Emerick* v. *Emerick*, 170 Conn. App. 368, 378, 154 A.3d 1069, cert. denied, 327 Conn. 922,       A.3d       (2017). With these principles in mind, we now turn to the specific claims of the plaintiff.

## I

The plaintiff first claims that the court erred with respect to its orders regarding the defendant's pensions. Specifically, he contends that the court improperly failed (1) to include the pensions in the division of the marital property and (2) to credit the testimony of his pension actuary as to the present value of the pensions. We conclude that, contrary to the plaintiff's claim, the court accounted for the pensions in its financial orders and, considering the totality of its orders, did not abuse its discretion in its valuation or distribution of the pensions. Further, we are not persuaded that the court improperly disregarded the testimony of the plaintiff's pension actuary.[10]

The following additional facts are necessary for our discussion. During her career, the defendant worked for a number of companies, including GE Capital, Xerox, Citibank, Bank of America and MetLife.[11] As a result, she received several pensions that were in pay status at the time of trial and provided her with $961 per week, or approximately $50,000 per year, of gross income. The plaintiff presented a pension actuary as an expert witness. The court stated: "The pension [actuary] testified as to the current present value of the defendant's pension benefits and also applied a coverture fraction to determine what [the pension actuary] described as the marital portions of those pensions with the numerator being the number of years that the benefit was earned during the marriage and the denominator being

the number of total years that the benefit was earned with that employer."

The pension actuary determined that the defendant's Citigroup pension had a present value of $68,415, but that the marital value was $0 because it had been earned prior to the marriage. The pension actuary further concluded that a pension from Aegon and the GE pensions had present values of $181,060 and $413,131, respectively. The pension actuary concluded that the present value of the pensions was $662,606.

The court, without specifically discrediting or rejecting the testimony of the pension actuary, noted some concerns with her conclusions. First, the court observed that "as to the GE pension, the [pension] actuary incorrectly assumed that the defendant's career at GE was all during the marriage, a significant error since the vast majority of the defendant's career at GE took place prior to the marriage." It also stated that the pension actuary, in calculating the present value of the pensions, used "widely accepted mortality tables that do not account for the health of the employee whose benefit is being analyzed. In this case, with a nearly seventy-two year old woman who has a history of past and current cancer, those assumptions may not be entirely accurate."

As we noted previously, the court did not include the defendant's pensions in the property division. Instead, the court determined that the pensions had been accrued substantially prior to the marriage and treated them as income to support the defendant and the minor child to offset the "little financial contribution being ordered today to be paid by the plaintiff." The court explained that its order regarding the pensions played a role in its decision to depart from the child support guidelines and to not order the plaintiff to pay $257 per week in child support to the defendant.

Before addressing the plaintiff's specific arguments, we first set forth the legal principles relevant to this issue. "As a general framework, [t]here are three stages of analysis regarding the equitable distribution of each resource: first, whether the resource is property within . . . § 46b-81 to be equitably distributed (classification); second, what is the appropriate method for determining the value of the property (valuation); and third, what is the most equitable distribution of the property between the parties (distribution)." (Internal quotation marks omitted.) *Cunningham* v. *Cunningham*, 140 Conn. App. 676, 681, 59 A.3d 874 (2013); see also *Anderson* v. *Anderson*, 160 Conn. App. 341, 352, 125 A.3d 606 (2015).

Pension benefits constitute property under § 46b-81. *Cifaldi* v. *Cifaldi*, 118 Conn. App. 325, 331, 983 A.2d 293 (2009).[12] "Pension benefits constitute a form of deferred compensation for services rendered. . . . Pension ben-

efits are widely recognized as among the most valuable assets that parties have when a marriage ends. . . . Nevertheless, there is no set formula that a court must follow when dividing the parties' assets, including pension benefits." (Citations omitted; internal quotation marks omitted.) *Martin* v. *Martin*, 101 Conn. App. 106, 111, 920 A.2d 340 (2007); *Casey* v. *Casey*, 82 Conn. App. 378, 386–87, 844 A.2d 250 (2004); see also *Stamp* v. *Visconti*, 51 Conn. App. 84, 86, 719 A.2d 1223 (1998) (pension benefits are form of deferred compensation, not mere gratuities because employee receives lesser present compensation in exchange for future benefits).

In *Krafick* v. *Krafick*, 234 Conn. 783, 663 A.2d 365 (1995), our Supreme Court discussed the various methods of valuing and distributing pension benefits. Under the present value method, the court is required to "determine the present value of the pension benefits, decide the portion to which the nonemployee spouse is entitled, and award other property to the nonemployee spouse as an offset to the pension benefits to which he or she is otherwise entitled." (Internal quotation marks omitted.) Id., 800. This calculation for the present value method requires generally accepted actuarial principles.[13] Id., 801.

A second method, known as the present division, requires the court to determine, at the time of trial, the percentage share of the pension to which the nonemployee spouse is entitled. Id., 803. "In other words, the court will declare that, upon maturity, a fixed percentage of the pension be distributed to each spouse." Id.; see also *Bender* v. *Bender*, 258 Conn. 733, 758, 785 A.2d 197 (2001). This method credits both parties for the proportionate labors toward the pension. *Bender* v. *Bender*, supra, 759. This method does not require expert testimony from an actuary. Id., 762–63.

Our Supreme Court determined that the method of valuation is to be left to the discretion of the trial court. "We conclude that it is within the trial court's discretion . . . to choose, on a case-by-case basis, among the present value method, the present division method of deferred distribution, *and any other valuation method that it deems appropriate in accordance with Connecticut law that might better address the needs and interests of the parties.* . . . The touchstone of valuation, as well as the ultimate distribution of pension benefits, is the court's power to act equitably." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 760. It further noted that there was no general consensus among other jurisdictions as to the preferred valuation and division method, thereby leaving it to the discretion of the trial court. Id., 775 n.11. With these principles in mind, we turn to the plaintiff's specific arguments.

A

The plaintiff first argues that the court improperly failed to include the pensions as property of the marriage. Specifically, he contends that in dividing the marital property 33 percent to him and 67 percent to the defendant, the court erred in not including the pensions. We are not persuaded.

This argument requires us to interpret the judgment of the trial court. "The construction of a judgment is a question of law for the court. . . . We review such questions of law de novo. . . . As a general rule, judgments are construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The judgment should admit of a consistent construction as a whole. . . . To determine the meaning of a judgment, we must ascertain the intent of the court from the language used and, if necessary, the surrounding circumstances." (Citation omitted; internal quotation marks omitted.) *Lewis* v. *Lewis*, 154 Conn. App. 233, 243, 105 A.3d 344 (2014); see also *Avery* v. *Medina*, 174 Conn. App. 507, 517, 163 A.3d 1271, cert. denied, 327 Conn. 927,    A.3d    (2017).

The plaintiff correctly states that the court excluded the defendant's pensions from the marital assets when it awarded one third of the assets to the plaintiff and two thirds to the defendant. His claim falters, however, with his contention that the court failed to account for the pensions in its financial orders.[14] To the contrary, the court offset the monthly income from the pensions by ordering a downward departure from the child support guidelines, and in consideration of its finding that the pensions had been accrued substantially prior to the marriage and that it had ordered "little financial contribution" from the plaintiff to the defendant.

In discussing the defendant's pensions, the court summarized the testimony of the pension actuary and noted that certain aspects were problematic. It then stated that the plaintiff had done "nothing to assist" the defendant's career and in fact had jeopardized it by making unauthorized stock trades that subjected her to possible discipline. The court also noted that the plaintiff had provided little to no noneconomic contributions, and that the defendant was primarily responsible for the upbringing of the child and the running of the household.

The court awarded all of the income from the defendant's pensions, $961 per week or approximately $50,000 in gross annual income, to the defendant. In exchange, the court ordered that the plaintiff would not be required to pay child support, a downward deviation from the presumptive amount of $257 per week. In making its orders, the court also relied on its finding that the defendant's pensions had been accrued substantially prior to the marriage. This modified version

of the present division method is well within the court's discretion in applying the factors of § 46b-81 (c). See *Bender* v. *Bender*, supra, 258 Conn. 760–61.

Contrary to the plaintiff's argument, the court did in fact value and distribute the defendant's pensions.[15] Rather than include them in those marital assets subject to the percentage division between the parties, the court offset the pensions with the order of no child support and the consideration that the pensions had been accrued substantially prior to the marriage. See *Ranfone* v. *Ranfone*, 103 Conn. App. 243, 253, 928 A.2d 575 (touchstone of valuation and ultimate distribution of pension benefits is court's power to act equitably), cert. denied, 284 Conn. 940, 937 A.2d 698 (2007); *Kunajukr* v. *Kunajukr*, 83 Conn. App. 478, 481–82, 850 A.2d 227 (issues involving financial order entirely interwoven and carefully crafted mosaic, each element of which may be dependent on the other), cert. denied, 271 Conn. 903, 859 A.2d 562 (2004).[16]

To the extent that the plaintiff argues that the court should have made this distribution more clear, or placed specific values on its determinations, we simply note that he could have moved for an articulation, but failed to do so. See Practice Book § 66-5. "[T]he appellant bears the burden of providing an appellate court with an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of [a] decision . . . [or] to clarify the legal basis of a ruling. . . . [I]t is incumbent upon the appellant to take the necessary steps to sustain [her] burden of providing an adequate record for appellate review. . . . [A]n appellate tribunal cannot render a decision without first fully understanding the disposition being appealed. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court." (Citations omitted; internal quotation marks omitted.) *Tonghini* v. *Tonghini*, 152 Conn. App. 231, 237–38, 98 A.3d 93 (2014). Accordingly, we conclude that this argument has no merit.

B

The plaintiff next argues that the court improperly failed to credit the testimony of the pension actuary as to the present value of the pensions.[17] Specifically, he contends that the court "abused its discretion in not valuing the retirement assets when the court had the present value of the assets, and all the evidence necessary to make the present value calculation with the coverture fraction for the [GE] pension." He further claims that the court's stated reasons for not crediting the pension actuary's use of the present value of the pensions, that is, that the majority of the GE pension was earned prior to the marriage and that the pension actuary used a widely accepted mortality table that

did not account for the specific health conditions and history of the defendant, were not sufficient reasons to reject her testimony. We conclude that this argument is without merit because the court, in its discretion, used the present division method to value the defendant's pensions.

As previously stated, a court may value and distribute pension benefits according to either the present value or present division methods. *Krafick* v. *Krafick*, supra, 234 Conn. 800–803. The method of valuation for pension benefits is left to the discretion of the trial court. *Bender* v. *Bender*, supra, 258 Conn. 760. Here, the court heard and considered the testimony of the pension actuary and elected to use a modified present division method in its valuation of the defendant's pensions. Accordingly, it was unnecessary for the court to rely on the testimony from the pension actuary. See id., 762; see also *Ranfone* v. *Ranfone*, supra, 103 Conn. App. 253. We conclude, therefore, that the plaintiff's claims regarding the testimony of the pension actuary fail.

## II

The plaintiff next claims that the court abused its discretion in awarding him 33 percent, and not 50 percent, of the marital home. Specifically, he argues that "he is entitled to 50 [percent] and not 33 [percent] of the marital home because he paid a substantial portion of the mortgage until it was paid off and thereby contributed to the preservation and appreciation of the marital home because [he] helped [extinguish] the mortgage over a twenty-four year period." We are not persuaded.

The court noted that the marital home had been purchased by the defendant in 1988, prior to the marriage, for $595,000, with a 20 percent down payment. It also found that "[t]he plaintiff declined the defendant's offer earlier in the marriage to purchase an equity interest in the home; as a result, the home has always been in the defendant's sole name. The mortgage was paid off in 2009. The plaintiff's rental payments to the defendant throughout the parties' relationship were of some assistance to the defendant and helped to make sure the mortgage was paid early. However, the defendant was able to pay off her mortgage nine years early primarily due to her additional principal payments over the years as a result of her substantial income. It is likely that, even without the plaintiff's assistance, she would have paid off the mortgage well before the end of the thirty year term." The court determined the value of the marital home to be $787,500 at the time of trial.

We have iterated that "[t]here is no set formula the court is obligated to apply when dividing the parties' assets and . . . the court is vested with broad discretion in fashioning financial orders." (Internal quotation marks omitted.) *Bonito* v. *Bonito*, 140 Conn. App. 697, 707, 59 A.3d 882 (2013); see also *Sapper* v. *Sapper*, 109

Conn. App. 99, 107–108, 951 A.2d 5 (2008) (courts not bound to specific formula and not required to ritualistically recite statutory criteria considered in dividing marital assets).

In the present case, the court found that the defendant had purchased the home prior to the marriage and made a 20 percent down payment.[18] It also determined that although the plaintiff had made "some relatively minor financial contributions to home improvements," the defendant was solely responsible for major home improvements such as a new roof. It also found that the defendant had made greater economic and noneconomic contributions during the marriage.

Under these facts and circumstances, the plaintiff has failed to demonstrate an abuse of discretion with respect to the division of the marital home. We are mindful that "[o]n the basis of the plain language of § 46b-81, there is no presumption in Connecticut that marital property should be divided equally prior to applying the statutory criteria." (Internal quotation marks omitted.) *Desai* v. *Desai*, 119 Conn. App. 224, 238, 987 A.2d 362 (2010). The court thoughtfully and carefully considered the testimony, exhibits and relevant statutory factors in dividing the marital property. The court's memorandum of decision sets forth the reasoning underlying its exercise of discretionary powers. See, e.g., *Bento* v. *Bento*, 125 Conn. App. 229, 233, 8 A.3d 531 (2010). Accordingly, we disagree with the plaintiff that the court abused its discretion with respect to the division of the marital home.

### III

The plaintiff finally claims that the court improperly awarded him only 33 percent of the marital estate. Specifically, he argues that the court failed to account adequately for his age, health, station, occupation, amount and sources of income, earning capacity, vocational skills and employability. We disagree.

This section of the plaintiff's brief essentially recites his testimony during the trial and fails to cite any authority for his claim that the court should have ordered a more equitable distribution of property and assets. As we stated in parts I and II of this opinion, the court considered the evidence and applied the relevant factors set forth in § 46b-81, and its financial orders did not constitute an abuse of discretion. The plaintiff's brief appears to ask this court to afford him a "second bite at the apple." Significantly, he did not direct our attention to any authority that would support this request. Accordingly, we conclude that the court did not abuse its discretion as to its division of the marital estate.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of

the date of oral argument.

[1] The court stated: "The [defendant's] Stamford home where the parties lived together throughout the marriage was purchased by the defendant in 1988, long before the parties' marriage, for $595,000 with 20 [percent] down. The plaintiff declined the defendant's offer earlier in the marriage to purchase an equity interest in the home; as a result, the home has always been in the defendant's sole name."

[2] The parties used a surrogate, and the child was born when the plaintiff was fifty-one years old and the defendant was sixty years old.

[3] The court noted that the plaintiff took medication daily for a number of issues and, at some point, had prostate cancer.

[4] With respect to the defendant's health, the court stated that she "was diagnosed with breast cancer in 2008. She had surgery at that time. In late 2014, she learned that the cancer had recurred and she [was] considering another operation. She also needs eye surgery and surgery on each hand."

[5] The court accepted and incorporated into the dissolution judgment the parenting plan of the parties, which provided for joint legal custody, with the defendant having primary physical custody of the minor child.

[6] The court noted that this factor was not significant in the overall disposition of the present case.

[7] The court determined that the defendant's assets totaled $3,393,418 and that the plaintiff's assets totaled $1,226,247.

[8] "The child support guidelines are the rules, principles, schedule and worksheet established under sections 46b-215a-1, 46b-215a-2b, 46b-215a-3, 46b-215a-4a and 46b-215a-5b of the Regulations of Connecticut State Agencies for the determination of an appropriate child support award, to be used when initially establishing or modifying both temporary and permanent orders. Regs., Conn. State Agencies § 46b-215a-1 (5); see also General Statutes § 46b-215b." (Internal quotation marks omitted.) *Budrawich* v. *Budrawich*, 156 Conn. App. 628, 630 n.1, 115 A.3d 39, cert. denied, 317 Conn. 921, 118 A.3d 63 (2015).

[9] The court did not award alimony to either party.

[10] As a result of these conclusions, we need not address the plaintiff's claim that the court's deviation from the child support guidelines would remain valid and severable from any error with respect to the division of the parties' assets.

[11] The court noted that "the plaintiff did nothing to assist in his wife's career advancement; in fact, at times he jeopardized his wife's career by making unauthorized stock trades that subjected the defendant to possible disciplinary action."

[12] Our Supreme Court, however, has stated explicitly that "[t]raditional property principles, although relevant . . . are not determinative of whether an interest constitutes property under § 46b-81." (Citation omitted.) *Bender* v. *Bender*, 258 Conn. 733, 748, 785 A.2d 197 (2001); see also *Ranfone* v. *Ranfone*, 103 Conn. App. 243, 251, 928 A.2d 575 (when dividing marital property pursuant to § 46b-81, court, in effort to observe equitable purpose of statutory distribution scheme, looks to substance and not mere form), cert. denied, 284 Conn. 940, 937 A.2d 698 (2007).

[13] "Calculating [the present value of a pension] may require taking actuarial testimony, which generally involves: (1) determining future benefits, taking into consideration the date of the employee spouse's retirement, postmarital salary, future taxes and the duration of benefits; and (2) discounting for present value, the probability of mortality and the probability of forfeiture." *Bender* v. *Bender*, supra, 258 Conn. 756–57.

[14] See, e.g., *Purnell* v. *Purnell*, 95 Conn. App. 677, 683, 897 A.2d 717 (because fact on which party based claim did not find support in record, claim must fail on appeal), cert. denied, 280 Conn. 903, 907 A.2d 91 (2006).

[15] In *Krafick* v. *Krafick*, supra, 234 Conn. 805–806, the trial court failed to consider the plaintiff's pension interest as an asset because it did not have a liquid value and the court did not employ a substitute value. Our Supreme Court concluded that it was an abuse of discretion "to reject present value or any value for vested pension benefits merely because the asset is nonliquid, thereby effectively removing that property interest from the scales in determining an equitable division of all of the property before the court." Id., 806. Unlike the trial court in *Krafick*, the court in the present case did not remove the defendant's pensions from the scales, but instead balanced them against the order of no child support, and in consideration of the fact that the majority of the pensions had been earned prior to the marriage.

[16] The plaintiff argues that "[t]here is no precedent to support the Superior

Court's legal authority to treat the pensions in repayment as an 'income stream' instead of classifying [them] as marital property and assessing the value of that property for purposes of equitable distribution." We iterate that the court did value and distribute the defendant's pensions in accordance with the factors set forth in § 46b-81 (c). See, e.g., *Thompson* v. *Thompson*, 183 Conn. 96, 100, 438 A.2d 839 (1981) ("General Statutes §§ 46b-81 [c] and 46b-82 *both* require the trial court to consider, inter alia, the occupation and the amount and *sources of income of each of the parties when ordering property assignments* and alimony. Just as current and future wages are properly taken into account under these statutes, so may unaccrued pension benefits, a source of future income, be considered." [Emphasis added; footnote omitted.]).

Additionally, in *Brady-Kinsella* v. *Kinsella*, 154 Conn. App. 413, 421–24, 106 A.3d 956 (2014), cert. denied, 315 Conn. 929, 110 A.3d 432 (2015), which is cited in the defendant's brief, we concluded that it was not an abuse of discretion for the court to award the defendant her gross weekly pension payment of $1197, offset by the following payments to the plaintiff: "$125,841 . . . to equalize the distribution of the real property, deferred compensation accounts, and automobiles. In addition, the court ordered the defendant to pay a weekly sum of $172 in child support, maintain life insurance and pay 61 percent of the minor child's unreimbursed medical expenses, as well as the extracurricular expenses." Id., 424. We conclude, therefore, that the use of a pension in repayment as an offset to other financial orders does have support in our law.

[17] We note that "[i]t is the quintessential function of the finder of fact to reject or accept evidence and to believe or disbelieve any expert testimony. . . . The trier may accept or reject, in whole or in part, the testimony of an expert." (Internal quotation marks omitted.) *Sander* v. *Sander*, 96 Conn. App. 102, 107, 899 A.2d 670 (2006).

[18] We also note that the court "found the defendant to be a credible, thoughtful and careful witness. The plaintiff was not as credible as the defendant."