******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOSEPH DINUNZIO *v.* CATHERINE DINUNZIO
(AC 39008)

Sheldon, Bright and Beach, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the trial court dissolving her marriage to the plaintiff and making certain financial orders regarding, inter alia, the plaintiff's military pension. *Held* that the trial court having erred in treating the plaintiff's military pension as a source of income rather than as property subject to equitable distribution, the court's financial orders could not stand: our Supreme Court has held previously that vested pension benefits constitute property, and are not a source of income, for purposes of equitable distribution pursuant to the statute (§ 46b-81) that governs the distribution of assets in a dissolution action, and this court found unavailing the plaintiff's claim that the trial court properly treated his pension as a source of income because it was in pay status, as pensions in pay status must be treated as property, valued and either distributed or considered as an offset or balance to the trial court's financial orders, and the record showed that the trial court in the present case improperly classified the plaintiff's pension only as a source of income, not as property subject to equitable distribution.

Argued December 4, 2017—officially released March 6, 2018

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Suarez, J.*; judgment dissolving the marriage and granting certain other relief; thereafter, the court denied the defendant's motion for reconsideration and reargument, and the defendant appealed to this court. *Reversed in part; further proceedings.*

*Brandon B. Fontaine*, with whom, on the brief, was *C. Michael Budlong*, for the appellant (defendant).

*James E. Mortimer*, with whom, on the brief, was *Michael D. Day*, for the appellee (plaintiff).

*Opinion*

SHELDON, J. The defendant, Catherine Dinunzio, appeals from the judgment of the trial court dissolving her marriage to the plaintiff, Joseph Dinunzio, on the ground that the court erred in treating the plaintiff's pension, from which he began to receive payments shortly after he commenced this action, only as a source of income and not as property subject to equitable distribution. We agree with the defendant and, accordingly, reverse the judgment of the trial court and remand this case for a new trial.[1]

The trial court set forth the following findings of fact in its January 25, 2016 memorandum of decision dissolving the parties' marriage. "The parties were married on May 17, 2003, in Orlando, Florida. . . . There is one minor child born to the parties since the date of the marriage . . . . The marriage between the parties has broken down irretrievably and there is no reasonable prospect of reconciliation.

"The plaintiff is sixty-one years old and in good health. He graduated from the [United States] Naval Academy, holds an aerospace engineering degree and has training in nuclear power. He served in the [United States] Navy on and off for twenty-eight years. He worked in the private sector for Northrop Grumman as a military consultant before being recalled to active duty. He retired as a Commander from the United States Navy [Navy] at age forty-nine. His last military assignment was in the country of Bahrain.

"When the plaintiff retired from the Navy, one month after the parties married, he started working for himself as a day trader. In 2003, his day trading account was valued at $147,375. Since then, he has consistently lost money trading. The parties' 2008 income tax return shows a business loss of $7748; the 2009 income tax return shows a business loss of $9136; the 2011 income tax return shows a business loss of $14,274; and the 2013 income tax return shows a business loss of $11,535.

"He currently has $1000 left in his trading account. The plaintiff has not made any efforts to seek gainful employment since his retirement. In spite of the plaintiff's significant losses, his plans are to continue day trading as long as he has any money left in his trading account.

"In July, 2014, the plaintiff elected to receive his military pension without a right of survivorship. At that time, he received $20,000 in a lump sum. He currently receives $650 gross weekly from his pension with a net of $475. The plaintiff lists on his financial affidavit $681 in weekly expenses. That amount includes $70 per week on a first mortgage, $35 per week on a second mortgage, and $95 in property taxes. The plaintiff's assets include a Navy Federal Credit Union account with a current balance of $1000; a U.S.A. account with a current bal-

ance of $15; a TD Bank account with a current balance of $19; and savings bonds valued at $1130. He also has an [individual retirement account (IRA)] with a current balance of $600.

"The plaintiff's financial affidavit lists a total of $57,478 in liabilities. He has a USAA Visa with a balance of $14,920; a Navy Federal Credit Union debt in the amount of $25,000; a Lowes credit card with a balance of $1300; a Home Depot credit card with a balance of $400; a . . . debt in the amount of $9200 [that was owed to the mediator that the parties used before filing this action]; an outstanding dental bill in the amount of $1158; and $5500 in attorney's fees.

"The plaintiff is currently residing in a home located at 300 Main Street [in] Rocky Hill . . . . He purchased the home before the marriage and the deed is solely in his name. The home is valued at $180,000. It has a mortgage in the amount of $35,515 and an equity line of credit lien in the amount of $72,744. There is $71,741 in equity.

"The plaintiff kept a safe in the marital home containing 1173.5 ounces of silver valued at $15.76 per ounce, totaling [approximately] $18,494; two ounces of palladium with an unknown value; fifteen presidential dollars worth $15; two mint sets consisting of a penny, nickel and dime from 2007 and 2008; a 1985 commemorative coin set; and 2007 and 2008 dollar coins. The plaintiff values the coins at $16,800.

"The defendant is forty-two years old and in good health. She graduated from dental hygienist school and has a bachelor's degree in dental hygiene. Since 2003 she has worked as a dental hygienist. She earns $39 per hour and sometimes works on Saturdays. Her net weekly income is $830. She has $1136 in weekly expenses. She has [$67,321] in total liabilities including: a TD Bank and a USAA visa with a combined balance of $175; $24,946 in attorney's fees; $950 to the guardian ad litem; $14,000 to a mediator; $6000 to her sister; and $21,000 to her father. There is also a joint debt in the amount of $250 to the minor child's dentist.

"The defendant's assets include a TD Bank checking account with a balance of $974 and a jointly held TD Bank savings account with a $3 balance. She also has a 401(k) account with John Hancock with an approximate value of $100,000 and a [United States] savings bond with a value of $744.

"The parties first met in Bahrain. The plaintiff was there serving in the Navy and the defendant was a flight attendant stationed there. They married on May 17, 2003, and when the plaintiff retired from the Navy, they came to live in Connecticut. The plaintiff started working for himself as a day trader. The defendant has always wanted the plaintiff to get a job, but he has refused to do so. In 2007, the parties decided to have

a child and the child was born on April 4, 2008. After the birth of the minor child, the defendant still wanted the plaintiff to seek employment, but he insisted that he would stay at home day trading and taking care of the minor child. . . .

"During the course of the marriage, the plaintiff managed the household bills, but it was the defendant's income that funded the expenses. The plaintiff was not working and his day trading business was deteriorating. In 2014, when this action started, the plaintiff told the defendant that she could stay in the home as long as she paid for the household expenses. On February 4, 2015, a court order entered wherein the plaintiff was responsible to pay for the two mortgages, taxes, homeowners [insurance], electricity, internet, cable, TV and home phone. The defendant was to pay $300 per week to the plaintiff for contributions to the household expenses as long as she resided in the home. The parties were to share the minor child's expenses equally. In April, 2015, the defendant moved out of the home.

"On September 23, 2015, a parenting plan was submitted to the court and it was accepted . . . . The agreement provides for joint legal custody, but it does not designate a primary residence. The agreement provides that the plaintiff is to parent the child each week from Sunday at 12 noon until Tuesday at 6:30/7 p.m., and Wednesday at 7 p.m. until Friday at 5 p.m. The defendant is to parent the child each week from Tuesday at 6:30/7 p.m. until Wednesday at 7 p.m., and from Friday at 5 p.m. until Sunday at 12 noon.

"The parenting plan does not provide for child support. According to the child support guidelines submitted by the plaintiff, assuming that he is the custodial parent, the presumptive child support is $166 per week from the defendant to the plaintiff. According to the Connecticut child support guidelines submitted by the defendant, assuming that she is the custodial parent, the presumptive child support is $105 per week from the plaintiff to the defendant.

"Since the date of separation, neither party has paid child support to the other. Moreover, the plaintiff has refused to pay for any of the child's extracurricular activities, including summer camp, karate and Girl Scouts (Brownies). The plaintiff does not want to contribute toward the child's expenses.

"The plaintiff claims that the marriage broke down in 2010 when the defendant was briefly hospitalized for depression. He also claims that the marriage suffered from lack of communication. The court does not find the plaintiff credible.

"The defendant claims the marriage broke down after the birth of their child. At that time, she felt depressed for the lack of help in the marriage, the loss of money from day trading, the accumulation of debt, the plain-

tiff's refusal to seek employment, and the plaintiff's heavy drinking." (Footnote omitted.)

On the basis of those factual findings, the court dissolved the marriage and adopted the parenting plan agreed to by the parties. The court did not award child support to either party, deviating from the child support guidelines due to the shared physical custody of the minor child. The court ordered the defendant to pay alimony to the plaintiff in the amount of $75 per week for four years, modifiable as to amount only, but terminable on the death of either party or the plaintiff's remarriage or cohabitation. The court ordered that the defendant would be entitled to claim the minor child as a dependent for tax purposes. Each party would be responsible for his or her own debts as listed on their financial affidavits and for their respective attorney's fees.

The court awarded the marital home, located on Main Street in Rocky Hill, to the plaintiff. The court ordered that the plaintiff keep as his sole property all funds in his Navy Federal Credit Union, USAA, and TD Bank accounts and the savings bonds listed in his financial affidavit, and that the defendant keep as her sole property all funds in her TD Bank checking and savings accounts and the United States savings bonds listed in her financial affidavit. The court ordered the parties' jointly held TD Bank savings account to be liquidated and that all funds in it be shared equally. The court ordered that the plaintiff keep as his sole property the coins and the metals he kept in his safe.

The court further ordered that the plaintiff keep as his sole property the IRA listed on his financial affidavit and that the defendant transfer to the plaintiff, by way of a qualified domestic relations order (QDRO), 40 percent of her John Hancock 401(k), valued as of the date of judgment.

The defendant thereafter filed a motion for reconsideration and articulation, arguing, inter alia, that the court improperly treated the plaintiff's pension as an income stream rather than as property. The court denied the defendant's motion and this appeal followed.

The defendant claims on appeal that the trial court erred in treating the plaintiff's military pension as a source of income rather than as property subject to equitable distribution. In response, the plaintiff argues that the court properly treated his pension as a source of income because it was in pay status.[2] We agree with the defendant.

"The purpose of a dissolution action is to sever the marital relationship, to fix the rights of the parties with respect to alimony and child support . . . [and] to divide the marital estate . . . ." (Internal quotation marks omitted.) *Kent* v. *DiPaola*, 178 Conn. App. 424, 430, 175 A.3d 601 (2017). "The distribution of assets in

a dissolution action is governed by [General Statutes] § 46b-81, which provides in pertinent part that a trial court may assign to either the husband or the wife all or any part of the estate of the other. . . . In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates. . . . This approach to property division is commonly referred to as an all-property equitable distribution scheme. . . . It does not limit, either by timing or method of acquisition or by source of funds, the property subject to a trial court's broad allocative power. . . .

"There are three stages of analysis regarding the equitable distribution of each resource: first, whether the resource is property within § 46b-81 to be equitably distributed (classification); second, what is the appropriate method for determining the value of the property (valuation); and third, what is the most equitable distribution of the property between the parties (distribution)." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Krafick* v. *Krafick,* 234 Conn. 783, 792–93, 663 A.2d 365 (1995). The determination of whether a resource was properly classified by the trial court as income, instead of as property to be equitably distributed within the meaning of § 46b-81, is a matter of statutory interpretation, which is a matter of law, requiring plenary review. *Lopiano* v. *Lopiano*, 247 Conn. 356, 363, 752 A.2d 1000 (1998).

In *Krafick* v. *Krafick*, supra, 234 Conn. 783, our Supreme Court held that vested pension benefits constitute property for purposes of equitable distribution pursuant to § 46b-81. Id., 793. The court reasoned that the language of § 46b-81 must be interpreted broadly to include such benefits because they "represent a form of deferred compensation for services rendered"; (internal quotation marks omitted) id., 794; and "are widely recognized as among the most valuable assets that parties have when a marriage ends." Id., 796. The court in *Krafick* expressly rejected the proposition that pension benefits may be considered either as property or as a source of income for alimony. Id., 798 n.22. The court explained: "Section 46b-81 requires a trial court to make an equitable distribution of the parties' *property*; to go about doing so sensibly, a court must determine at the outset which of the parties' resources are subject to division and assignment under that provision. Although [General Statutes] § 46b-82 authorizes the trial court to

award alimony in addition to or *in lieu of* [a distribution of property] pursuant to section 46b-81 . . . the trial court may decide to exchange alimony for property only *after* determining the value of the property in the estate.

"This classification is significant for two reasons. First, property, even if not so characterized by the trial court, will ultimately be awarded to one of the parties; the statutory duty to distribute property equitably contemplates that the trial court effect such awards consciously rather than by default. Second, although it may be permissible in the distribution phase to exchange some form of alimony for a property award when equitable to do so . . . it must be remembered that these awards are of different quality and consequence for the recipient spouse. An award of property is final; the party who receives property pursuant to § 46b-81 owns it in his or her own right and controls it. Periodic alimony, on the other hand, is conditional, subject to modification or elimination. See General Statutes § 46b-86." (Emphasis in original; internal quotation marks omitted.) *Krafick* v. *Krafick*, supra, 234 Conn. 798 n.22.

"In determining whether alimony shall be awarded, and the duration and amount of the award, the court . . . shall consider . . . the award, if any, which the court may make pursuant to section 46b-81 . . . ." General Statutes § 46b-82. "Thus, where it is equitable to do so, the trial court may offset the allocation to one spouse of the entire value of the pension with alimony instead of or in addition to assets."[3] *Krafick* v. *Krafick*, supra, 234 Conn. 801 n.25.

The court in *Krafick* rejected the argument that "a trial court may assign a pension no value if the pension is taken into account as a source of alimony." Id., 804. The court held that the trial court erred by effectively removing the pension "from the scales in determining an equitable division of all of the property before the [trial] court." Id., 806. The court's reasoning applies with equal force regardless of whether the pension is in pay status at the time of dissolution. Even in pay status it remains a valuable asset. It is no different than other property that is generating income, such as an annuity or a contract that provides for periodic payments due from the sale of a business.[4]

This court's recent decision in *Kent* v. *DiPaola*, supra, 178 Conn. App. 424, is also instructive. As in the present case, the trial court in *Kent* was faced with the question of the treatment of pensions in pay status. "[T]he trial court excluded the defendant's pensions from the marital assets when it awarded one third of the assets to the plaintiff and two thirds to the defendant." Id., 437. Consequently, the plaintiff argued that the court failed to value and distribute the pensions. Id. This court rejected that argument because the record was clear that the trial court determined the value of the pensions and distributed them. Id., 437–38. This court therefore

concluded that, "unlike the trial court in *Krafick*, the court in the present case did not remove the defendant's pensions from the scales, but instead balanced them against the order of no child support, and in consideration of the fact that the majority of the pensions had been earned prior to the marriage." Id., 438 n.15. Thus, although this court in *Kent* did not require that the pensions in pay status be part of the property award, this court nonetheless concluded that such pensions be treated as property, valued and either distributed or considered as an offset or balance to the trial court's financial orders.

Here, the trial court referenced the plaintiff's military pension only in setting forth its factual findings as to the plaintiff's gross and net weekly income and the fact that he received $20,000 upon his election to receive his pension benefits. The court did not mention the plaintiff's pension in its property distribution orders, omitting it completely from the category entitled: "Pension, IRA and Retirement Assets." It thus did not assign the pension a value, or order that it be distributed to either party. Nowhere in its decision, moreover, did the court state that it was considering the pension as an offset or a balance against any of its other financial orders.[5] It is therefore clear that the trial court improperly classified the plaintiff's pension only as a source of income, not as property subject to equitable distribution.[6]

"[T]he issues involving financial orders are entirely interwoven, [and] [t]he rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Grant* v. *Grant*, 171 Conn. App. 851, 869, 158 A.3d 419 (2017). Because the trial court's failure to classify the plaintiff's pension as property for equitable distribution is not severable from its other financial orders, this case must be remanded for a new trial on all financial orders.

The judgment is reversed as to all of the trial court's financial orders and the case is remanded for further proceedings on all financial issues in accordance with this opinion.

In this opinion the other judges concurred.

[1] The defendant also claims that the trial court's property distribution and alimony awards were inequitable. Because we reverse the court's financial orders in their entirety and remand the case for a new trial, we need not address these additional claims.

[2] The plaintiff also argues that the defendant waived her claim to any interest in his pension by not asking for it at trial. The defendant's inclusion of the plaintiff's pension in her proposed orders belies this claim.

[3] The court in *Krafick* also rejected the "contention that to consider vested benefits for purposes of equitable distribution and also, as allocated, as a source of alimony constitutes impermissible 'double dipping.' " *Krafick* v. *Krafick*, supra, 234 Conn. 804–805 n.26. Our alimony statute provides that "[i]n determining whether alimony shall be awarded, and the duration and amount of the award, the court . . . shall consider . . . the award, if any, which the court may make pursuant to section 46b-81 . . . ." General Statutes § 46b-82. "Relying on the pension benefits allocated to the employee

spouse under § 46b-81 as a source of alimony would be improper only to the extent that any portion of the pension assigned to the nonemployee spouse was counted in determining the employee spouse's resources for purposes of alimony." *Krafick* v. *Krafick*, supra, 805 n.26.

[4] It is worth noting that the plaintiff elected to receive payments from his pension approximately one month after he commenced this action.

[5] The plaintiff argues that we must presume that the trial court properly classified and distributed his military pension as property because there is no evidence in the record that it did not. There is nothing in the court's memorandum of decision that could be construed as an acknowledgement that the plaintiff's pension was property. In fact, the court's mention of only the amount of income that the plaintiff is receiving undermines this argument. Moreover, if we were to presume that the court did, in fact, classify the plaintiff's pension as property, and order that he retain it in its entirety, such an order would further skew an already puzzling property distribution.

[6] The fact that the court assigned a value to the defendant's pension and awarded 40 percent of her pension to the plaintiff underscores its different classification of the parties' pensions.